## PEOPLE v. HERRERA

1. ARREST—WITHOUT WARRANT—VALIDITY—STATUTE.

Peace officers have statutory power to arrest a person, without a warrant, when they have reasonable cause to believe that a felony has been committed and that the person arrested has committed it (CL 1948, § 764.15).

2. ARREST—VALIDITY—CONSTITUTIONAL LAW—COURTS.

The court will determine the constitutional validity of an arrest when it is challenged and will decide whether the facts avail-

---

REFERENCES FOR POINTS IN HEADNOTES

[1–3, 5–7] 5 Am Jur 2d, Arrest § 24 *et seq.*
Lawfulness of nonconsensual search and seizure without warrant, prior to arrest. 89 ALR2d 715.
[4, 8–14] 47 Am Jur, Searches and Seizures § 19.

able to police at the time of a suspect's arrest would warrant a reasonable belief that a felony has been committed by the person arrested.

3. ARREST—WITHOUT WARRANT—VALIDITY—OFFICER'S BELIEF.
   An officer must believe and not merely suspect that a person has committed a felony before he can validly arrest that person without a warrant.

4. SEARCHES AND SEIZURES—ARREST—SUBTERFUGE.
   An arrest made as a subterfuge for a search and seizure is an unlawful arrest for that reason alone.

5. ARREST—WITHOUT WARRANT—REASONABLE BELIEF—OBSERVATION —RELIABLE SOURCES.
   A police officer's reasonable belief, to validate an arrest without a warrant, must be based on what the officer himself observes or what he learns from reliable sources including information from a reliable citizen or from a criminal informant whose reliability has been verified by the government on the basis of past experience.

6. ARREST — WITHOUT WARRANT — PANDERING — PROBABLE CAUSE — COMPLAINING WITNESS — SURVEILLANCE.
   Suspect's arrest, without a warrant, for pandering, was valid where the complaining witness told police that the suspect had enticed her into prostitution, and gave them names and dates relevant to her allegation and where her information was verified by an independent police surveillance of the place where the prostitution occurred and by contacts with complainant's family and the Women's Division of the police department.

7. ARREST—WITHOUT WARRANT—VALIDITY—PROBABLE CAUSE.
   An arrest of a suspect without a warrant is not unlawful, if probable cause exists for believing that a crime has been committed, even where police have adequate opportunity to obtain a warrant before the arrest.

8. ARREST—SEARCHES AND SEIZURES—PREMISES—SUSPECT'S CONTROL.
   A valid search of the premises under the control of a suspect may be made as an incident of a valid arrest but an arrest may not be made only as a pretext for a search.

9. ARREST — WITHOUT WARRANT — PANDERING — SEARCHES AND SEIZURES — NARCOTICS — ADMISSIBILITY.
   Narcotics found by police on premises within the possession and control of a suspect who had been arrested, without a war-

rant, for pandering based on information from complaining witness, were admissible into evidence where the pandering complainant had also told police that the suspect was in possession of marihuana and an arresting officer smelled marihuana when he entered defendant's room (CLS 1961, § 335.153; CL 1948, § 750.455).

10. SEARCHES AND SEIZURES—ARREST—OTHER CRIMES.

Evidence of crimes other than the one for which an accused has been lawfully arrested uncovered by a search incident to the arrest may also be used against him for the other crimes so discovered.

11. SEARCHES AND SEIZURES—REASONABLENESS.

There is no fixed formula as to what constitutes an unreasonable search; the reasonableness of searches must be resolved by the facts and circumstances of each case.

12. SEARCHES AND SEIZURES—ARREST—ARRESTEE'S PERSON—PREMISES—CONTROL.

A new standard of reasonableness for a search incident to a valid arrest established by the United States Supreme Court permits an arresting officer to search an arrestee's person and the area within the arrestee's immediate control but does not justify a routine search of an area other than the one in which the arrest occurred.

13. SEARCHES AND SEIZURES—ARREST—REASONABLENESS—RETROACTIVITY.

The standard of reasonableness of search which permits an arresting officer to search an arrestee's person and the area within the arrestee's immediate control but does not justify a routine search of an area other than the one in which the arrest occurred does not apply to searches conducted before the date it was decided by the Supreme Court of the United States, June 23, 1969.

14. SEARCHES AND SEIZURES—ARREST—IMMEDIATE CONTROL—CONSTRUCTION.

The area within an arrestee's immediate control means the area from within which the arrestee might gain possession of a weapon or destructible evidence.

Appeal from Recorder's Court of Detroit, Vincent J. Brennan, J. Submitted Division 1 February 5, 1969 at Detroit. (Docket No. 2,580.) Decided

October 1, 1969.  Rehearing denied November 14, 1969.

Louis Herrera was convicted of unlawful possession of narcotics.  Defendant appeals.  Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Samuel J. Torina,* Chief Appellate Lawyer and *Luvenia D. Dockett,* Assistant Prosecuting Attorney, for the people.

*Joseph R. Bathey,* for defendant on appeal.

Before: LESINSKI, C. J., and T. M. BURNS and KELLEY,* JJ.

LESINSKI, C. J.  Defendant was convicted on April 13, 1966 of unlawful possession of narcotics.[1]  He appeals, contending: (1) that the arrest was unlawful because the police lacked probable cause to arrest him without a warrant; (2) that the arrest was unlawful because the arresting officers had no justifiable excuse for failure to obtain an arrest warrant; (3) that evidence of defendant's possession of narcotics must be suppressed because his arrest for pandering was used as a mere pretext to allow officers to conduct an illegal search, and (4) that the warrantless search of the entire premises where defendant was arrested, even if incidental to a lawful arrest, was unreasonable and requires suppression of any evidence of narcotics obtained thereby.

Regarding defendant's first contention, that his arrest was illegal due to the lack of probable cause,

---

* Circuit judge sitting on the Court of Appeals by assignment.
[1] CLS 1961, § 335.153 (Stat Ann 1957 Rev § 18.1123).

CL 1948, § 764.15 (Stat Ann 1954 Rev § 28.874), provides the general rule:

"Any peace officer may, without a warrant, arrest a person   *   *   *

"(d) When he has reasonable cause to believe that a felony has been committed and reasonable cause to believe that such person has committed it."

This Court amplified that rule in *People* v. *Wolfe* (1967), 5 Mich App 543, 548, citing *Beck* v. *Ohio* (1964), 379 US 89 (85 S Ct 223, 13 L Ed 2d 142):

" 'When the constitutional validity of an arrest is challenged, it is the function of a court to determine whether the facts available to the officers at the moment of the arrest would "warrant a man of reasonable caution in the belief" that an offense has been committed.' "

The *Wolfe* Court further cited George, Constitutional Limitations on Evidence in Criminal Cases (1966, Institute of Continuing Legal Education) pp 12, 13:

" 'It is important to note that the officer must "believe" and not merely "suspect" that the person arrested has committed the felony. *Cf. Beck* v. *Ohio* (1964), 379 US 89 (85 S Ct 223, 13 L Ed 2d 142). Often this is a verbal distinction which laymen do not make, but officers should be trained to testify in terms of belief and not of "suspicion". Even if there is belief, the trial court must later determine whether the belief was reasonable under the circumstances. *Wong Sun* v. *United States* (1963), 371 US 471 (83 S Ct 407, 9 L Ed 2d 441); *Henry* v. *United States* (1959), 361 US 98 (80 S Ct 168, 4 L Ed 2d 134). If the arrest is viewed as a subterfuge for a search and seizure, it may be viewed as unlawful on that basis alone. *Jones* v. *United States* (1958), 357 US 493 (78 S Ct 1253,

12 L Ed 2d 1514). The standards in the Federal cases control so far as the states are concerned, as a result of *Mapp* v. *Ohio,* 367 US 643 (81 S Ct 1684, 6 L Ed 2d 1081, 84 ALR2d 933). *Cf. Stoner* v. *California* (1964), 376 US 483 (84 S Ct 889, 11 L Ed 2d 856).

" 'The officer's reasonable belief must be based on what he observes or what he learns from reliable sources. Offenses are committed in the officer's presence if they are ascertainable through sight, sound, smell, or touch. Information supplied from a reliable citizen source is probably enough to found a reasonable belief; if it comes from a criminal informant, the state or government must be prepared to submit data establishing the reliability of the informant on the basis of past experience, *e.g., Draper* v. *United States* (1959), 358 US 307 (79 S Ct 329, 3 L Ed 2d 327).' " *Wolfe, supra,* pp 549, 550.

The defendant in the instant case was originally arrested without a warrant for the felony of enticing a female to become a prostitute (CL 1948, § 750.455 [Stat Ann 1954 Rev § 28.710]). A review of relevant facts concerning the arrest indicates that the arrest occurred following the interrogation of a prostitute who was the complaining witness. The prostitute was brought to police headquarters about 3 p.m. on September 10, 1965, after she attempted suicide. Upon questioning by police officers she complained that the defendant and four other named persons had enticed her into prostitution. She provided details, including naming the place where she was taken by defendant to obtain contacts for prostitution, the date when she started and the period over which she indulged in prostitution. She further informed police that defendant was located at a certain motel, was leaving town that same day at about 10 p.m., and was in posses-

sion of marihuana. The police officers checked her background by contacting her family and the Women's Division of the Detroit Police Department. Moreover, officers alternated in interviewing her over approximately a two-hour period to check the veracity and accuracy of her statements. Furthermore, the police, through independent surveillance, possessed evidence that prostitution occurred in the place named by the complainant. Based upon these facts, the reliability of the complainant was established and there was probable cause to warrant a man of reasonable caution to believe that the crime of pandering had been committed by defendant. Therefore, the trial court did not err in determining that the police officers had probable cause to arrest the defendant.

Defendant next contends that his arrest without warrant was unreasonable and unlawful because the arresting officers had no justifiable excuse for failure to obtain an arrest warrant prior to his arrest. In connection with this contention, he cites *Chapman* v. *United States* (1961), 365 US 610 (81 S Ct 776, 5 L Ed 2d 828); *Johnson* v. *United States* (1948), 333 US 10 (68 S Ct 367, 92 L Ed 2d 436); *United States* v. *Lefkowitz* (1931), 285 US 452 (52 S Ct 420, 76 L Ed 877); *Agnello* v. *United States* (1925), 269 US 20 (46 S Ct 4, 70 L Ed 145, 51 ALR 409); and *Eng Fung Jem* v. *United States* (CA9 1960), 281 F2d 803. Regarding defendant's citation of *Lefkowitz*, he acknowledges in his brief that he substitutes the word "arrest" for the word "search" in contending that the same principles found in *Lefkowitz* regarding search apply to arrest warrants. Upon analysis of *Lefkowitz*, we find the rule of law therein to apply only to the reasonableness of a search without a warrant and not to the reasonableness of an arrest without a warrant. Sim-

ilarly, analysis of the remaining cases cited by defendant to support his contention that his arrest without a warrant was unreasonable, discloses that each involves the reasonableness of the failure to obtain a search warrant as opposed to the failure to obtain an arrest warrant. Defendant has cited no case support for his contention that the same standards should apply to the necessity of obtaining arrest warrants as apply to search warrants. Furthermore, he provides no authority to support his contention that an arrest without warrant is unlawful where the police have sufficient opportunity to obtain a warrant prior to the arrest. Upon consideration of US Const, Am 4, and Const 1963, art 1, § 11, we find no valid basis for the adoption of defendant's cited standard for reasonableness regarding searches as the standard to be applicable to arrests. Furthermore, our research discloses no case support for defendant's position.[2] Indeed, ample authority exists to the contrary, numerous courts holding that an arrest without a warrant is not unlawful even though the police have adequate opportunity to obtain an arrest warrant prior to the arrest.[3] Upon the basis of this authority and the

---

[2] Although numerous cases require an arrest warrant where the officer has an opportunity to obtain one, these cases are based upon specific statutory requirements that no arrest be made without a warrant unless an emergency exists or it appears that defendant will escape. See, *e.g., United States* v. *Coplon* (CA 2, 1950), 185 F2d 629, 28 ALR2d 1041, *cert. den.* 342 US 920 (72 S Ct 362, 96 L Ed 688); *Gill* v. *State* (1938), 134 Tex Crim 363 (115 SW2d 923); *State* v. *Hucks* (1965), 264 NC 160 (141 SE2d 299). These statutory restrictions on a police officer's right to arrest without a warrant are not present in Michigan since CL 1948, § 764.15 (Stat Ann 1954 Rev § 28.874), allows such an arrest when the police officer has reasonable cause to believe a felony has been committed and reasonable cause to believe the person arrested has committed it.

[3] See *United States* v. *Irby* (CA 4, 1962), 304 F2d 280, *cert. den.* 371 US 830 (83 S Ct 39, 9 L Ed 2d 67); *Alvarez* v. *United States* (CA 5, 1960), 275 F2d 299; *United States* v. *Swanner* (ED Tenn, 1964), 237 F Supp 69; *United States* v. *Monroe* (ED La, 1962), 205 F Supp 175, *aff'd* 320 F2d 277, *cert. den.* 375 US 991 (84 S Ct 630, 11 L Ed 2d 478). See, also, *People* v. *Panknin* (1966), 4 Mich App

lack of contrary authority, we conclude that in the instant case defendant's arrest without a warrant was lawful and reasonable and failure to obtain a warrant does not require reversal of his conviction.

Defendant further contends that the evidence used to convict him must be suppressed because his warrantless arrest for pandering was used by the officers as a mere pretext for gaining admission to his motel room to search for narcotics. In support of his contention, defendant relies upon *United States v. Harris* (CA6, 1963), 321 F2d 739, especially the dissenting opinion. Federal narcotics agents in *Harris* received information from an informant that Harris had a quantity of bulk narcotics in his apartment which he was putting into capsule form, and that upon completion of the task Harris would move to another location. The officers surrounded the apartment, knocked on defendant's door and told defendant that they were police officers and that he was under arrest. When defendant attempted to slam the door in their faces, the officers at the main and bedroom doors forced their entrance into the apartment and conducted an extended search. The majority opinion stated:

"It is well established that a valid search of premises under control of an arrested person may be made as an incident of a valid arrest. * * *

"An arrest may not be used as a pretext or subterfuge for making a search of premises without a search warrant where ordinarily one would be required under the Fourth Amendment. If, in fact, the *primary* purpose of forcibly entering a person's home is to search for evidence with which to convict him of crime, the evidence so obtained is not admissible in court." (Emphasis supplied.)

---

19 (where this Court upheld a warrantless arrest where the officers had sufficient time to obtain an arrest warrant). See, generally, *Oleson v. Pincock* (1926), 68 Utah 507 (251 P 23).

The *Harris* majority found Harris' arrest to be a mere pretext for a search. A factor in this conclusion was the fact that successful prosecution of Harris for the crime for which he was arrested was virtually impossible without the physical evidence seized in the search. Also influential was the forcible immediate entrance of the officers through both doors of Harris' apartment, calculated to deny Harris the opportunity to destroy the evidence sought in the search.

In the instant case, unlike *Harris,* the police had probable cause to arrest defendant on the pandering charge and successful prosecution was highly likely as the informant was an eyewitness to the pandering. Further, in the case at bar, unlike *Harris,* ample testimony indicated that the police waited outside the defendant's door a few minutes after identifying themselves, until defendant's wife opened the door. This action of the police is consistent with their alleged primary purpose of arresting the defendant but is inconsistent with defendant's allegation that the arrest was a mere pretext for the search.

Defendant's reliance on the dissenting opinion in *Harris* is misplaced. The dissenting judge cited *Abel* v. *United States* (1960), 362 US 217 (80 S Ct 683, 4 L Ed 2d 668), and *Taglavore* v. *United States* (CA9, 1961), 291 F2d 262, for the principle that an arrest has the characteristic of a subterfuge where it is "an arrest for one offense with a search for evidence of another". As applied by defendant, this statement is overbroad because in *Abel,* where use of an administrative arrest for deportation proceedings was alleged to be a mere pretext for an illegal search, the Supreme Court refused to suppress the evidence on the grounds of pretext. The Court stated that the evidence obtained from the search

incident to an arrest should be suppressed only if the original arrest were made in bad faith.[4] The Supreme Court added in *Abel, supra,* p 230:

"We emphasize again that our view of the matter would be totally different had the evidence established, or were the courts below not justified in not finding, that the administrative warrant was here employed as an instrument of criminal law enforcement to circumvent the latter's legal restrictions, rather than as a bona fide preliminary step in a deportation proceeding."

Similarly, in *Taglavore, supra,* the Court of Appeals stated at p 265:

"Normally one's person or property may not be searched unless the authorities conducting the search have a search warrant which has been issued by a magistrate upon at least a showing of probable cause. Certain well-established exceptions exist to this basic rule. One such exception, within which the government claims the instant case falls, is that incident to a valid arrest the person arrested may be searched without warrant. Thus, where one has been legally arrested for the commission of a crime his person, and in most cases, his immediate surroundings at the time of arrest may be properly searched. The main purpose of this exception is to facilitate discovery of various elements and evidence of the crime for which the accused is being arrested, and also to remove weapons or other instrumentalities which might be used to resist the officers or for escape or similar purposes. If the search happens to uncover evidence of crimes other than the one for which the accused has been arrested, this evidence may also be used against him

---

[4] The original arrest in the instant case was made on the basis of substantial evidence tending to prove pandering in violation of CL 1948, § 750.455 (Stat Ann 1954 Rev § 28.710), and conviction could result in punishment by imprisonment for not more than 20 years.

in prosecutions for the other crimes so discovered. *Harris* v. *United States* (1947), 331 US 145 (67 S Ct 1098, 91 L Ed 1399). Certain decisions even indicate that the arresting officers may deliberately look for evidence of other crimes in addition to that for which the arrest is being made. *Charles* v. *United States* (CA9, 1960), 278 F2d 386. However, there is one fixed and essential prerequisite to all of these searches: in each case there must be a valid, bonafide arrest to which the search is merely incident. Where the arrest is only a sham or a front being used as an excuse for making a search, the arrest itself and the ensuing search are illegal. *Worthington* v. *United States* (CA6, 1948), 166 F2d 557; *Henderson* v. *United States* (CA4, 1926), 12 F2d 528 (51 ALR 420). 'An arrest may not be used as a pretext to search for evidence.' *United States* v. *Lefkowitz* (1932), 285 US 452, 467 (52 S Ct 420, 424, 76 L Ed 877). To put it in other words, the *search* must be incident to the *arrest,* and not vice versa."

In *Taglavore,* the court suppressed evidence of narcotics where a traffic warrant was used as a mere excuse to search defendant for narcotics. Evidence demonstrating the arrest to be a mere pretext included: (1) the officers' delay in using the arrest warrant until immediately after the arrest of defendant's employer on a narcotics charge, (2) the fact that it is not ordinary police procedure to take a person physically into custody for a minor traffic violation, and (3) the officers, after receiving prior warning that defendant might have marihuana cigarettes in his possession, upon his arrest immediately applied force to choke defendant severely after he put something in his mouth.

In the instant case, our review of the evidence in light of the principles expressed in *Harris, Abel,* and *Taglavore, supra,* convinces us that the primary

purpose of the police officers was to arrest the defendant for pandering, that the arrest was valid and bona fide and that substantial evidence existed to support the pandering charge so that it was not a pretext for the search.

Defendant's final contention is that the evidence of narcotics must be suppressed even if the search occurred incident to a lawful arrest, since the warrantless search of the entire premises in which defendant was arrested was unreasonable. Defendant relies primarily upon *Chapman* and *Johnson* v. *United States, supra,* and *United States* v. *Horton* (WD Mich, 1949), 86 F Supp 92.

*Chapman* is inapplicable as it involves a warrantless search *not incident* to a valid arrest. *Johnson* v. *United States, supra,* offers defendant no assistance as that case involved a search found not incident to a lawful arrest, in which the Supreme Court stated that while odors *alone* do not authorize a search without a warrant, odors, where established by a qualified witness, do constitute evidence tending to prove probable cause for a search. *Horton,* while applicable, primarily relies upon that portion of *Trupiano* v. *United States* (1948), 334 US 699 (68 S Ct 1229, 92 L Ed 1663), which was expressly *overruled* in *United States* v. *Rabinowitz* (1949), 339 US 56 (70 S Ct 430, 94 L Ed 653).

*Rabinowitz* involves the reasonableness of a warrantless limited search of a business place consisting of a one-room office, incident to a valid arrest with an arrest warrant. The *Rabinowitz* Court stated the general rule at p 63:

"[I]t seems never to have been questioned seriously that a limited search such as here conducted as incident to a lawful arrest was a reasonable search and therefore valid. It has been considered

in the same pattern as search of the person after
lawful arrest.

 "What is a reasonable search is not to be deter-
mined by any fixed formula. The Constitution does
not define what are 'unreasonable' searches and,
regrettably, in our discipline we have no ready
litmus-paper test. The recurring questions of the
reasonableness of searches must find resolution in
the facts and circumstances of each case. (Citation
omitted.) Reasonableness is in the first instance for
the District Court to determine. We think the Dis-
trict Court's conclusion that here the search and
seizure were reasonable should be sustained."

*Rabinowitz* cited *Harris* v. *United States* (1946),
331 US 145 (67 S Ct 1098, 91 L Ed 1399), involving
the search and seizure of selective service notice-
of-classification cards and registration certificates
incident to an arrest pursuant to a lawful warrant.
In *Harris* the Court indicated the extent of a "rea-
sonable" search stating at p 151:

"The opinions of this Court have clearly recog-
nized that the search incident to arrest may, under
appropriate circumstances, extend beyond the per-
son of the one arrested to include the premises
under his immediate control. Thus in *Agnello* v.
*United States* [269 US at 30, 46 S Ct 4, 70 L Ed
148, 51 ALR 409], it was said:
 " 'The right without a search warrant contempo-
raneously to search persons lawfully arrested while
committing crime and to search the place where the
arrest is made in order to find and seize things
connected with the crime as its fruits or as the
means by which it is committed, as well as weapons
and other things to effect an escape from custody,
is not to be doubted.' It is equally clear that a
search incident to arrest, which is otherwise rea-
sonable, is not automatically rendered invalid by
the fact that a dwelling place, as contrasted to a
business premises, is subjected to search.

"Nor can support be found for the suggestion that the search could not validly extend beyond the room in which petitioner was arrested. Petitioner was in exclusive possession of a four-room apartment. His control extended quite as much to the bedroom in which the draft cards were found as to the living room in which he was arrested. The cancelled checks and other instrumentalities of the crimes charged in the warrants could easily have been concealed in any of the four rooms of the apartment. Other situations may arise in which the nature and size of the object sought or the lack of effective control over the premises on the part of the persons arrested may require that the searches be less extensive. But the area which reasonably may be subjected to search is not to be determined by the fortuitous circumstance that the arrest took place in the living room as contrasted to some other room of the apartment.

"Similar considerations are applicable in evaluating petitioner's contention that the search was, in any event, too intensive. Here again we must look to the particular circumstances of the particular case. As was observed by the Circuit Court of Appeals: 'It is not likely that the checks would be visibly accessible. By their very nature they would have been kept in some secluded spot.' The same meticulous investigation which would be appropriate in a search for two small canceled checks could not be considered reasonable where agents are seeking a stolen automobile or an illegal still. We do not believe that the search in this case went beyond that which the situation reasonably demanded."

In the instant case the trial court refused to suppress the evidence of narcotics, finding the narcotics to have been properly seized incident to a valid arrest. We would sustain the trial court's conclusion, as the search and seizure under the *Harris* and *Rabinowitz* tests was reasonable under the facts and circumstances of the case. As previously indi-

cated, the arrest without warrant for pandering was valid and occurred with probable cause. The police officers, in making the arrest, knocked on defendant's door, waited a few minutes, and then were voluntarily admitted. An eyewitness informant as to the pandering charge had previously told the officers that marihuana was on the premises. An officer detected the odor of marihuana as he entered the motel room. The police, upon entering, observed the defendant standing behind an open bathroom door. One officer proceeded toward the bathroom to arrest the defendant and testified that when he called to the defendant to come out of the bathroom, defendant complied. The officer asserted that after the arrest he entered the bathroom, found two of the motel towels lying in the shower stall rolled up and soaking wet, and unrolled the towels to disclose the suspected narcotics. Testimony of the two remaining officers suggests that defendant was arrested and the search was conducted while defendant remained in the bathroom. While testimony regarding the place of the arrest and the location of the defendant at the time of the search is in conflict, resolution of this conflict is not crucial to our upholding the validity of the search under *Harris* and *Rabinowitz*.

This Court recognizes the United States Supreme Court opinion in *Chimel* v. *California* (1969), 395 US 752 (89 S Ct 2034, 23 L Ed 2d 685), which stated that *Rabinowitz* and *Harris* are "no longer to be followed", and set forth a new standard at p 762:

"When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In

addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control' —construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.

"There is no comparable justification, however, for routinely searching rooms other than that in which an arrest occurs—or for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself."

However, this Court finds *Chimel* not to be retroactive in its application to warrantless searches.[5] *Chimel* was decided on June 23, 1969; the search in the instant case occurred on September 10, 1965. Therefore, *Chimel* is inapplicable to the facts of the instant case.

Since in Herrera, the search occurred incident to a lawful arrest, was limited to a motel room and bathroom within the possession and immediate control of defendant and his wife, was neither general nor exploratory but specifically to find narcotics, was conducted following an informant's statement that narcotics were on the premises, and one police officer detected the odor of marihuana in the motel

---

[5] See *Linkletter* v. *Walker* (1965), 381 US 618 (85 S Ct 1731, 14 L Ed 2d 601). See also *VonCleef* v. *New Jersey* (1969), 395 US 814 (89 S Ct 2051, 23 L Ed 2d 728); and *Shipley* v. *California* (1969), 395 US 818 (89 S Ct 2053, 23 L Ed 2d 732).

room as he entered, the search and seizure of the marihuana without a search warrant was lawful.

Affirmed.

All concurred.