PEOPLE *v* EDDINGTON

OPINION OF THE COURT

1. CRIMINAL LAW—PROOFS—EVIDENCE—DISCRETION—PHOTOGRAPHS.
   The people are not required to present their case on any theory
   of alternate proofs; there is no evidentiary rule that a trial
   court abuses its discretion by failing to require exhaustion
   of alternate proofs prior to admitting photographs in evi-
   dence.

2. CRIMINAL LAW—BURDEN OF PROOF.
   The burden is upon the people in a criminal case to prove
   every element of the crime charged.

3. HOMICIDE—EVIDENCE—PICTURES—CORPUS DELICTI—DISCRETION.
   Pictures showing murder victims, as they were found, depicted
   the *corpus delicti* and the admission of such evidence is in
   the sound discretion of the trial judge.

REFERENCES FOR POINTS IN HEADNOTES

[1]  29 Am Jur 2d, Evidence § 692 *et seq.*
[2]  29 Am Jur 2d, Evidence § 12.
[3]  29 Am Jur 2d, Evidence § 785 *et seq.*
[4]  47 Am Jur, Searches and Seizure § 21 *et seq.*
[5]  58 Am Jur, Witnesses § 624.
[6]  4 Am Jur 2d, Appeal and Error § 397 *et seq.*
[7]  58 Am Jur, Witnesses § 621.
[8]  58 Am Jur, Witnesses § 629.
[9]  40 Am Jur 2d, Homicide §§ 482, 488.
[10]  29 Am Jur 2d, Evidence § 786.
[11]  47 Am Jur, Searches and Seizures § 52 *et seq.*
[12]  5 Am Jur 2d, Arrest §§ 24, 32.
[13, 16–18]  47 Am Jur, Searches and Seizures § 54.
[14, 15]  47 Am Jur, Searches and Seizures § 53.
[19]  29 Am Jur 2d, Evidence § 798.
[20]  40 Am Jur 2d, Homicide §§ 482, 488.
[21]  40 Am Jur 2d, Homicide § 482 *et seq.*
[22]  40 Am Jur 2d, Homicide § 536.
[23]  40 Am Jur 2d, Homicide § 560.
[24]  21 Am Jur 2d, Criminal Law § 369; 29 Am Jur 2d, Evidence
      §§ 374, 377, 770.
   Footprints as evidence, 35 ALR2d 856.

4. SEARCHES ·AND SEIZURES—REASONABLE SEARCH—PROBABLE CAUSE
   —SHOES.

Search for a defendant by a detective and his examination of
shoes in defendant's apartment was a reasonable one because
the detective's actions were reasonable *in the light of all
circumstances* and he acted with the dispatch the occasion
warranted where, as he approached defendant's apartment,
he observed heel prints leading to the apartment in freshly
fallen snow, on close examination saw that the prints were
similar to the ones he had seen that very morning at the
scene of a double murder, for a new and compelling fact
was added to the knowledge he already had that had given
him reasonable cause to believe defendant committed the
murders, immediate investigation was called for by the
*exigencies of the situation*, he reasonably believed the de-
fendant to be hiding in the apartment and had every right,
supported by probable cause, to search for the suspected
killer, and the discovery of the shoes was not the result of
a general search for evidence but was seen during the course
of the search for defendant.

5. WITNESSES — CROSS-EXAMINATION — PREVIOUS CONVICTIONS —
   ARRESTS — DISCRETION.

A witness may be asked upon cross-examination, within the
sound discretion of the court, not only concerning a previous
conviction, but also as to any serious charge brought against
him whether he has been indicted, indicted but not convicted,
or arrested and confined in the state prison for another of-
fense; where a defendant takes the stand in his own behalf
he is subject to the same rules as to cross-examination as
any other witness even though it may show him to be guilty
of the commission of another offense (MCLA 600.2158).

6. APPEAL AND ERROR—RECORD.

Proper steps should be taken at the time a ruling of the judge
is made to see that it becomes a part of the record, if that
ruling is to be considered on appeal.

7. WITNESSES — CROSS-EXAMINATION — CREDIBILITY — PREJUDICE
   — ARRESTS — DISCRETION.

A trial judge should exercise his discretion in such a way that
a defendant is not cross-examined under the guise of testing
credibility, merely to prejudice the jury and this is par-
ticularly true where a question is propounded to show that
an arrest and pending charge is of the same nature as the
one for which defendant is being tried.

8. WITNESSES—CROSS-EXAMINATION—OTHER   CRIMES—MISCARRIAGE
   OF JUSTICE.
   When the design or effect of questions was not to elicit facts
   but to cast suspicion upon the witness with regard to the
   commission of other crimes, especially those of a similar
   nature, no guilt having been determined, the court should
   control and limit such cross-examination so as to prevent
   a miscarriage of justice.

9. HOMICIDE—OTHER CRIMES—PREJUDICE—NEW TRIAL.
   Defendant's conviction on two counts of murder should be
   reversed and remanded for a new trial where crimes for
   which he had not been tried and of which, until tried and
   found guilty he was presumed to be innocent, were delib-
   erately and intentionally injected into the trial; such tactics
   could manifestly prejudice a jury.

OPINION CONCURRING IN RESULT
T. M. KAVANAGH, C. J., and T. G. KAVANAGH, J.

10. HOMICIDE—EVIDENCE—PHOTOGRAPHS OF VICTIMS—ADMISSIBILITY
    —RELEVANCY—PREJUDICE—APPEAL AND ERROR.
    *Admitting into evidence the photographs of the deceased vic-
    tims of a crime of first-degree murder was reversible error
    where they were wholly irrelevant and served no other pur-
    pose than to prejudice the defendant.*

11. SEARCHES AND SEIZURES—APPEAL AND ERROR—CONSTITUTIONAL
    LAW.
    *Admission of defendant's shoes in evidence was reversible error
    for they were the product of an illegal search and seizure
    in violation of defendant's Fourth Amendment rights (US
    Const, Am IV).*

DISSENTING OPINION
BLACK, J.

12. ARREST—PROBABLE CAUSE—APARTMENT.
    *Detective, having probable cause to arrest defendant and having
    a reasonable belief that defendant was at home, was entitled
    to enter defendant's apartment and was lawfully on the
    premises.*

13. SEARCHES AND SEIZURES—SHOES—EVIDENCE.
    *Detective, having seen a pair of shoes during his lawful search
    for defendant and having good reason to believe that such*

shoes would, upon examination, prove to be those worn at a murder scene, properly scrutinized the shoes more carefully; that he was required to lift the shoes and examine the heels in order to identify them as evidence of crime did not transform his observations into an unconstitutional search.

14. SEARCHES AND SEIZURES—CONSTITUTIONAL LAW—PRIVACY, RIGHT OF.

A "search" in the constitutional sense implies a prying into hidden places for that which is concealed and that the object searched for has been hidden or been ·intentionally put out of the way; such a definition recognizes the gist of the protection afforded by the Fourth Amendment—protection of the individual from unreasonable invasion of privacy (US Const, Am IV).

15. SEARCHES AND SEIZURES—PRIVACY, RIGHT OF—CONSTITUTIONAL LAW.

Not only the place, but the type of information seized and, consequently, the means of intrusion, must be considered as relevant factors in determining the parameters of personal privacy protected by the Fourth Amendment (US Const, Am IV).

16. SEARCHES AND SEIZURES—SHOES—CONSTITUTIONAL LAW.

Detective's action in lifting defendant's shoes and examining their heels did not constitute a search in the constitutional sense; there was no "prying into hidden places for that which is concealed" as the shoes had not been hidden, nor were they intentionally put out of the way.

17. SEARCHES AND SEIZURES—SHOES—CONSTITUTIONAL LAW.

Detective's conduct was reasonable in constitutional terms where he was lawfully in defendant's apartment, he reasonably believed defendant to be hiding in the apartment and had every right, supported by probable cause, to search for the suspected killer and his discovery of defendant's shoes was not the result of a general search for evidence.

18. SEARCHES AND SEIZURES—SHOES—EVIDENCE—ADMISSIBILITY.

Detective's actions in lifting a pair of shoes, which he saw during the course of a search for defendant, and examining their heels involved no more than legitimate and restrained investigative conduct undertaken on the basis of ample factual justification and the shoes were properly admitted into evidence.

19. HOMICIDE — MURDER — MALICE — EVIDENCE — PHOTOGRAPHS — ADMISSIBILITY — DISCRETION.

*Colored photographs of corpses of two victims were admissible where the scenes depicted were helpful in throwing light on a material issue—namely, the malice with which the crimes, two murders, were committed and for purposes of clarifying and illustrating testimony relating to the victims' appearance and condition, and particularly for purposes of substantiating the people's theory concerning the atrociousness of the crimes, or the malice with which they were committed; there was no clear abuse of the trial judge's discretion in admitting them under the facts and circumstances of the case.*

20. HOMICIDE—MURDER—EVIDENCE—PREJUDICE—PENDING CHARGES.

*The danger of prejudicial effect was manifest and overwhelming where evidence that defendant had also been charged with a second double murder could only suggest to the jury that defendant's career included repeated assaults upon human life.*

21. HOMICIDE—MURDER—GUILT—INNOCENCE—PENDING CHARGES.

*Defendant was entitled to have his guilt or innocence of two homicides determined on the specific offenses charged; he was not required to risk the possibility of conviction for a series of unproven prior acts which collectively suggested that his career had been reprehensible.*

22. HOMICIDE—MURDER—CROSS-EXAMINATION—PENDING CHARGES—PREJUDICE.

*Defense counsel only brought out the pending charges against defendant on direct examination knowing full well that the people would be permitted to question defendant concerning the murder charges on cross-examination because of a ruling by the trial judge; this maneuver did not, however, open the door to the prejudicial cross-examination that took place regarding two other double murder cases pending against defendant.*

23. HOMICIDE — MURDER — IMPEACHMENT — EVIDENCE — PENDING CHARGES — APPEAL AND ERROR — MISCARRIAGE OF JUSTICE — STATUTES.

*Admission of pending murder charges for impeachment purposes was error and the improper admission of such evidence resulted in a miscarriage of justice (MCLA 769.26).*

24. CRIMINAL LAW—HOMICIDE—FINGERPRINT—HEEL PRINT—CONSTI-
    TUTIONAL LAW.

> No question of Fourth and Fifth Amendment rights would have
> been raised, if the link to a murder had been a fingerprint
> instead of a heel print (US Const, Ams IV, V).

Appeal from Court of Appeals, Division 3, J. H. Gillis, P. J., and McGregor and Quinn, JJ., reversing and remanding Saginaw, Fred J. Borchard, J. Submitted January 6, 1972. (No. 13 January Term 1972, Docket No. 52,927.) Decided June 20, 1972.

23 Mich App 210 conviction reversed.

William H. Eddington, Jr., was convicted on two counts of first-degree murder. Defendant appealed to the Court of Appeals. Reversed and remanded. The people appeal. Defendant cross-appeals. Conviction reversed and remanded for new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *George E. Thick, II,* Prosecuting Attorney, and *Donald A. Kuebler* and *Paul G. Miller, Jr.,* Special Assistant Prosecuting Attorneys, for the people.

*James A. Brisbois* (*Philip R. Sturtz* and *Jerold H. Israel,* of counsel), for defendant.

*Amicus Curiae: Campbell, Lee, Kruzman & Leitman.*

ADAMS, J.

## I.

### Statement of Facts

On February 4, 1967, officer Shelby of the Saginaw Police Department was told by Howard Mc-

Clain, an informer, that Ronald Johnson and William Eddington had been involved in the murder of Dr. and Mrs. Claytor on February 2, 1967, and in the armed robbery of Mrs. Goldie Caldwell and her tenant, Jack Prince, on January 25, 1967.

On February 5, 1967, the murders of Mr. and Mrs. Middeldorf were discovered and Shelby became involved in the investigation of those crimes. Mrs. Middeldorf was found drowned in the bathtub. Mr. Middeldorf was found bound at his hands and feet with plastic wrapped tightly around his head, several puncture wounds on his body, and a steak knife in his back. Shelby was shown a distinctive heel print left by the murderer in the bathroom near the bathtub where Mrs. Middeldorf was found. The print had been dusted with fingerprint powder to make it more readily visible. The print was distinctive because, even though from a man's shoe, it had a narrow heel. Shelby described the print as coming from a "Stetson shoe".

By the evening of February 5, Shelby felt that Eddington was involved in all three crimes because of the information from the informant concerning the Claytor murders and the Caldwell residence robberies and because Mr. Prince had identified Eddington as the man who robbed him. The Claytors and the Middeldorfs were both elderly couples, living alone. The men showed signs of having been tortured prior to death. The bound victims had been bound with items taken from the homes—ties, plastic rope, and lamp cords. The victims, other than those who were shot, were killed by the use of items in the homes—water, plastic, a hammer, and a steak knife. In several other robberies Eddington was suspected of committing, a back glass door had been broken as a means of gaining entry. In the Caldwell robbery, a gun had been placed behind

Mrs. Caldwell's left ear.  Both Dr. and Mrs. Claytor
were shot behind the left ear.  A small caliber pis-
tol had been used in the Caldwell robbery and in
the Claytor murders.  McClain, the informant, had
told Shelby that Ronald Johnson had a .22 caliber
pistol and that, in attempts to retrieve this gun,
McClain learned that Eddington had possession of
it.

After speaking with Mr. Prince around 9 p.m.
on February 5, Shelby asked the Saginaw County
prosecutor to issue warrants against Eddington
and Johnson for the robberies and the murders.
It was decided, however, that Shelby should arrest
Eddington only for the Caldwell residence robberies.
Accompanied by several officers, Shelby went to
Eddington's apartment.  The prosecutor had not yet
requested a warrant for Eddington's arrest.

As the police approached the apartment, Shelby
noticed Eddington's car parked nearby and shoe
prints leading to the apartment, the heel of which
was similar to the print at the home of the Middel-
dorfs.  When Shelby first knocked at Eddington's
apartment, no one answered.  Then a female voice
asked who was there.  When Shelby identified him-
self and asked to see Eddington, the woman stated
he had gone.  As Shelby was about to leave, the
woman called him back by name, opened the door,
and allowed Shelby to look through the apartment.
The woman was Johnetta Hawkins, Eddington's
girl friend.

When Miss Hawkins let Shelby into the apart-
ment, she was clad in a nightgown.  Shelby had
concluded she lived at the apartment because he
had frequently seen her at Eddington's residence
on previous occasions carrying packages in and out
and driving Eddington's car to and from the apart-
ment.

Previous to his entrance, Shelby had heard rust-lings he believed to be made by two people. He did not believe Miss Hawkins when she stated that Eddington was not at home and proceeded to look through the apartment. While going from a large bedroom via a closet to a smaller room, he noticed a pair of men's shoes sitting upright on the closet floor. He picked up the shoes, examined them, and saw that the heels were similar to the heel prints he had seen outside the apartment. By shining a flashlight on the shoes, he observed slivers of what appeared to be glass imbedded in the shoes. He replaced the shoes as he was not certain he had a legal right to take them. The officers left the apartment.

Thereafter, the prosecutor and the officers went to the home of a local justice of the peace. Shelby obtained an arrest warrant based on the Caldwell robbery charge and a search warrant authorizing a search of Eddington's apartment for the shoes and a .22 caliber pistol. The police re-entered Eddington's apartment and seized the shoes.

Eddington was arrested on the armed robbery charge on February 8, 1967. A warrant for his arrest on the Middeldorf murders was issued February 14, 1967.

The robbery charge was dismissed at the preliminary examination. Separate preliminary examinations were held on the charges of first-degree homicide of Mr. and Mrs. Middeldorf. At both hearings, the state introduced into evidence, and relied heavily upon, the shoes found by Shelby. Defendant was subsequently bound over for trial on the homicide charges. Upon an order for change of venue, the trial took place in the Wayne County Circuit Court.

Prior to trial, defense counsel made a motion to suppress the shoes from evidence. The motion was granted, but the people subsequently asked for and were granted reconsideration. Following an evidentiary hearing, the circuit court set aside its prior order and substituted an order denying defense counsel's motion. The court concluded: 1) Shelby had probable cause to arrest Eddington for both the Caldwell robberies and the Middeldorf murders prior to entering the apartment; 2) he had been invited to look through the apartment for Eddington by "a woman clad in a night dress"; and 3) he had made a *reasonable* examination of the apartment and shoes.

At the trial the shoes were again introduced into evidence. The prints at the Middeldorf home were shown to be similar to the prints made by the shoes. The refractive index of glass particles found imbedded in the shoes was shown to be identical to that of the broken glass window from the back door of the Middeldorf home.

Five colored pictures of the bodies of the Middeldorfs were allowed in evidence over objection. The witnesses who verified the pictures testified that the bindings, plastic and knife had not been changed. Neither body had been touched by any autopsies.

The defense called two witnesses to testify as to Eddington's reputation in the community for truth and veracity. Eddington, himself, took the stand. He testified as to a conviction during service and a $15 misdemeanor conviction. Defendant further stated that he had "four or five charges pending" against him, one of which had been dismissed prior to the date of the present trial.

On cross-examination, Eddington was asked about the nature of the charges. Objection to this question by defense counsel was overruled. Eddington

thereupon revealed that the pending charges included another double murder, an entering without breaking, and a breaking and entering.

Defendant was found guilty by the jury of the first-degree murders of Mr. and Mrs. Middeldorf.

Upon appeal to the Court of Appeals, after oral argument, defendant's attorney submitted an affidavit which stated that during the trial, in a conference with the trial judge concerning the scope of cross-examination of Eddington's pending charges, "[T]he Court advised the Prosecutor that he considered him to be on risky ground in pursuing the cross-examination in that area; * * * that the Prosecutor could proceed in that area at his own risk." The people filed a letter opposing the court's consideration of the *ex parte* affidavit.

The Court of Appeals reversed the lower court's decision and remanded the case for new trial, holding the trial judge improperly allowed cross-examination by the prosecutor as to the pending charges. (23 Mich App 210.) We granted the people leave to appeal. (384 Mich 755.) Defendant cross-appeals.

## II.

### Issues Raised

*A.* Did the admission into evidence of the five pictures of the two corpses constitute reversible error as being prejudicial and inflammatory and as being nonessential to prove a matter "in issue"?

The Court of Appeals held the photographs were properly admissible to show "the malice with which the crimes were committed," and to clarify and illustrate "testimony relating to the victims' appearance and condition". Since "the gruesome nature of the photographs" depicted the bodies as left by

the assailant and not by intervening medical examiners, the admission of the photographs could not be said to be an abuse of the trial judge's discretion.

In this case, it is claimed that because several witnesses could have testified with regard to the crime and the defense admitted it was committed with malice, the judge abused his discretion in admitting the pictures. In *People v Rogers,* 14 Mich App 207, 217 (1968), Judge (now Justice) T. G. KAVANAGH wrote:

"Having failed to require exhaustion of alternative proofs prior to admitting the photographs, the trial court abused its discretion."

We are unable to agree with such an evidentiary rule. The people are not required to present their case on any theory of alternative proofs.

In a criminal case, the burden is upon the people to prove every element of the crime charged. These are not nice pictures but they are not any more gruesome than some of the testimony by witnesses. The pictures showed the victims as they were found. The pictures depict the *corpus delicti.* The admission of such evidence is in the sound discretion of the trial judge.

It is stated in 29 Am Jur 2d, Evidence, § 787, pp 860–861:

"Photographs that are merely calculated to arouse the sympathies or prejudices of the jury are properly excluded, particularly if they are not substantially necessary or instructive to show material facts or conditions. If photographs which disclose the gruesome aspects of an accident or a crime are not pertinent, relevant, competent, or material on any issue in the case and serve the purpose solely of inflaming the minds of the jurors and prejudicing them against the accused, they should not be admitted in evidence. However, if photographs are

otherwise admissible for a proper purpose, they are
not rendered inadmissible merely because they bring
vividly to the jurors the details of a gruesome or
shocking accident or crime, even though they may
tend to arouse the passion or prejudice of the jurors.
Generally, also, the fact that a photograph is more
effective than an oral description, and to that extent
calculated to excite passion and prejudice, does not
render it inadmissible in evidence.

"When a photograph is offered the tendency of
which may be to prejudice the jury, its admissibility
lies in the sound discretion of the court. It may
be admitted if its value as evidence outweighs its
possible prejudicial effect, or may be excluded if
its prejudicial effect may well outweigh its proba-
tive value."

*B.* Was there an illegal seizure of the pair of shoes
contrary to defendant's Fourth Amendment rights
when the seizure of the shoes was the fruit: 1) of
a nighttime entry into defendant's apartment by
officers who had probable cause to make an arrest,
but lacked an arrest warrant; 2) of an examination
of defendant's closet following the entry during
which an officer picked up the shoes and turned them
over to examine the heels?

Judge J. H. GILLIS, writing for the Court of
Appeals, carefully detailed the activities of Detec-
tive Shelby leading up to the examination of the
shoes. After examining certain authorities as to
what constitutes a search, he concluded (pp 225–
226):

"Application of these principles here leads us to
our view that Detective Shelby's action in lifting
defendant's shoes and examining their heels did not
constitute a search in the constitutional sense. We
find no 'prying into hidden places for that which is
concealed.' The shoes had not been hidden; nor
were they intentionally put out of the way. Under

the circumstances, it does not appear that defendant exhibited a subjective expectation of privacy as to his shoes. *Cf. People* v. *Bradley* (1969), 1 Cal 3d 80 (81 Cal Rpt 457, 459, 460 P2d 129, 131). Moreover, any such expectation would have been unreasonable. Our values are not adjusted to view the heels of shoes as within the province of intimate personal control."

We are unable to agree with the reasoning of this portion of the opinion. In *People* v *Trudeau,* 385 Mich 276 (1971), this Court recognized a right of privacy, even while in prison, as to a person's shoes. Each case must be examined on its own facts. In *Trudeau,* unlike the situation in this case, the search was without probable cause, based upon a mere suspicion and under circumstances where the officer could have obtained a search warrant if there was probable cause to issue one.

The opinion of the Court of Appeals continues as follows (pp 226–227):

" 'Where a warrant has not been obtained, the validity of the search depends on the law's appraisal of the reasonableness of the search, only unreasonable warrantless searches and seizures being barred.' *People* v. *McDonald, supra,* [13 Mich App 226 (1968)] at 232.

"And see *People* v. *Gonzales* (1959), 356 Mich 247, 253; *People* v. *Zeigler* (1960), 358 Mich 355, 375; *People* v. *Herrera, supra* [19 Mich App 216 (1969)]. On this record we hold Shelby's conduct to be reasonable in constitutional terms.

"As previously indicated, Detective Shelby was lawfully in defendant's apartment. He reasonably believed defendant to be hiding in the apartment and had every right, supported by probable cause, to search for the suspected killer. Shelby's discovery of the shoes was not the result of a general search for evidence. Rather, the pair of shoes was seen during the course of the search for Eddington.

In our view, Shelby's subsequent actions in lifting the shoes and examining their heels involved no more than 'legitimate and restrained investigative conduct undertaken on the basis of ample factual justification.' *Terry* v. *Ohio, supra,* [392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968)] at 13."

We agree with the above analysis and hold that the search was a reasonable one. The point should be stressed. Shelby's actions were reasonable *in the light of all of the circumstances.* When the officer approached Eddington's apartment, observed the heel prints leading to the apartment in freshly fallen snow, and, on close examination, saw that the prints were similar to the ones he had seen that very morning at the scene of the murders, a new and compelling fact was added to the knowledge he already had that had given him reasonable cause to believe Eddington committed the murders. His further immediate investigation was called for by the exigencies of the situation. *Terry* v *Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968). In his search for Eddington and his examination of the shoes, he acted reasonably and with the dispatch the occasion warranted.

*C.* Did the trial court commit reversible error in permitting the prosecution, on cross-examination of defendant, to seek to impeach defendant through reference to previous charges (including two other murder charges) that were pending against defendant?

The Court of Appeals' opinion states (pp 231–232):

"We hold that admission of the pending murder charges for impeachment purposes was error. Furthermore, we are satisfied that the improper admission of such evidence resulted in a miscarriage of justice. MCLA § 769.26 (Stat Ann 1954 Rev § 28-

.1096). The question of Eddington's credibility was critical, and, on this record, we decline to characterize the improper impeachment of defendant's credibility as harmless error. This is especially true here, since defendant was subsequently acquitted of the charges of murdering the Claytors."

The Michigan evidentiary rule, both by way of statute[1] and case law,[2] as stated in 1 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 436, p 534, is as follows:

"A witness may be asked on cross-examination, within the sound discretion of the court, not only concerning a previous conviction, but also as to any serious charge brought against him whether he has been indicted, indicted but not convicted, or arrested and confined in the state prison for another offense. Where a defendant takes the stand in his own behalf he is subject to the same rules as to cross-examination as any other witness even though it may show him to be guilty of the commission of another offense."

In passing on this question, we do not consider the *ex parte* attempt of defendant's attorney to establish at the Court of Appeals' level and in this Court what purportedly took place at an in-chambers conference between the judge and the lawyers. If a ruling of the judge is to be considered on appeal, proper steps should be taken at the time it is made to see that it becomes a part of the record.

Defendant was called to testify in his own defense. During the direct examination, he was asked if other charges were pending against him and answered that he had four or five pending. On cross-examination, the prosecutor asked:

---

[1] MCLA 600.2158; MSA 27A.2158.
[2] See, *Driscoll v People*, 47 Mich 413 (1882); *People v Foote*, 93 Mich 38 (1892); *People v Foley*, 299 Mich 358 (1941); *People v Roger Johnson*, 382 Mich 632 (1969).

"*Q.* Now, Mr. Brisbois asked you if you were—if there were any charges pending against you at the present time and you answered yes.

"*A.* Yes.

"*Q.* And it is a fact that you are also charged in a double murder other than the one that we have at the present time?

"*Mr. Brisbois [defense counsel]:* If the Court please, we interpose an objection to this. The respondent has stated on direct examination that he has other charges pending and I believe he gave the number of other charges. We feel that it would be erroneous to allow counsel to inquire beyond that.

"*Mr. Dent [assistant prosecuting attorney]:* Counsel—are you finished? On direct examination he did not advise the jury of the nature of these charges.

"*The Court:* I am going to overrule the objection. Proceed."

The prosecutor thereupon continued his cross-examination with further questions as to the pending charges. From the above, it will be seen that the issue was raised in open court and that the judge did rule on the objection.

A trial judge should exercise his discretion in such a way that a defendant is not cross-examined, under the guise of testing credibility, merely to prejudice the jury. This is particularly true where a question is propounded to show that an arrest and pending charge is of the same nature as the one for which he is being tried. Unless cross-examination as to pending charges is carefully controlled, the possibilities for abuse, as illustrated by this case, are great. Eddington was not on trial for the murders of Dr. and Mrs. Claytor or for entering or for breaking and entering. Yet these crimes for which

he had not been tried and of which, until tried and found guilty he was presumed to be innocent, were deliberately and intentionally injected into the trial of this case. Such tactics could manifestly prejudice a jury. When the design or effect of the questions is not to elicit facts but to cast suspicion upon the witness with regard to the commission of other crimes, especially those of a similar nature, no guilt having been determined, the court should control and limit such cross-examination so as to prevent a miscarriage of justice. See *People* v *Gotshall,* 123 Mich 474 (1900).

Defendant's conviction is reversed and the case is remanded for a new trial.

T. E. BRENNAN, SWAINSON, and WILLIAMS, JJ., concurred with ADAMS, J.

T. G. KAVANAGH, J. (*concurring in result*). I concur in the result reached by my Brother ADAMS, but I disagree with his stated reasons.

First, I am satisfied that it was reversible error to admit the photographs of the deceased victims of this crime. They were wholly irrelevant and served no other purpose than to prejudice the defendant.

Second, I am convinced the admission of the defendant's shoes was reversible error for they were the product of an illegal search and seizure in violation of defendant's Fourth Amendment rights.

On retrial I would bar the photographs and the shoes.

T. M. KAVANAGH, C. J., concurred with T. G. KAVANAGH, J.

BLACK, J. (*dissenting*).   I agree with the reasoning of and disposition made by Division 3 (*People v Eddington*, 23 Mich App 210 [1970]) and therefore vote to affirm.   See, pertinent to one of the salient questions considered below, the dissenting view recorded by Justice T. E. BRENNAN and myself for *People v Trudeau*, 385 Mich 276, 281 (1971).