PEOPLE *v.* TRUDEAU

OPINION OF THE COURT

1. SEARCHES AND SEIZURES—UNREASONABLE SEARCHES AND SEIZURES —CRIMINAL LAW—INCARCERATED DEFENDANT—OPEN VIEW DOCTRINE—CONSTITUTIONAL LAW—PROBABLE CAUSE.

Seizure, without a warrant, of defendant's shoes while he was incarcerated at a county jail on an unrelated charge was not justified under the plain or open view doctrine, where no attorney was present, defendant was not advised of his constitutional rights, there was no showing that when the officer making the seizure went to the jail he was acting on anything other than a mere suspicion and, even after he had viewed the shoes and finally obtained them, the vital link between the shoes and the heel print found at the scene of the crime was not established, and the officer had no probable cause to believe that the seized shoes were evidence linked to the crime in regard to which the seizure was made until after a week-long examination by an expert.

2. SEARCHES AND SEIZURES—UNREASONABLE SEARCHES AND SEIZURES —CONSTITUTIONAL LAW—SELF-INCRIMINATION.

An imprisoned felon does not lose his constitutional right against self-incrimination as to an entirely separate offense and the right against unreasonable search and seizure is of equal stature with the privilege against self-incrimination.

3. CRIMINAL LAW—CIVIL RIGHTS—POLICE CUSTODY.

Defendant did not lose his civil rights or liberties while he was in police custody awaiting trial on another charge.

REFERENCES FOR POINTS IN HEADNOTES

[1-3] 47 Am Jur, Searches and Seizures § 21 *et seq.*
[4] 29 Am Jur 2d, Evidence § 374 *et seq.*

DISSENTING OPINION

BLACK and T. E. BRENNAN, JJ.

4. CRIMINAL LAW — FINGERPRINT — HEEL PRINT — CONSTITUTIONAL LAW.

*Defendant's conviction should be affirmed as, if the link to a murder had been a fingerprint instead of a heel print, no question of Fourth and Fifth Amendment rights would have been raised and there is no distinction between the two (US Const, Ams 4, 5).*

Appeal from Court of Appeals, Division 2, J. H. Gillis, P. J., and McGregor and V. J. Brennan, JJ., affirming Oakland, Frederick C. Ziem, J. Submitted May 5, 1971. (No. 33 April Term 1971, Docket No. 52,752–1/2.) Decided July 7, 1971. Rehearing denied August 27, 1971. Certiorari denied by the United States Court February 28, 1972.

22 Mich App 246 reversed.

Edward Trudeau was convicted of second-degree murder and breaking and entering. Defendant appealed to the Court of Appeals. Affirmed. Defendant appeals. Reversed and remanded for new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Thomas G. Plunkett,* Prosecuting Attorney, and *Dennis Donohue,* Chief Appellate Counsel, for the people.

*Jane Burgess* (State Appellate Defender Office), for defendant on appeal.

PER CURIAM. Defendant was arrested on November 19, 1967, in the United States Post Office Building on Dearborn Street, Detroit. He was charged with an attempt to injure or destroy a vault, and breaking and entering a building with intent to commit larceny. He was arraigned on November 20, 1967, without an attorney. At the arraignment,

counsel was appointed for Trudeau and his co-defendant. The preliminary examination was set for November 27.

On November 6, 1967, during an attempted burglary from a vault at the Shaarey Zedek Synagogue in Southfield, Michigan, the night watchman was killed by blows to his head from a crowbar. Sergeant Fasbinder of the Southfield police was assigned to that case. One of the few leads available was a heel print left at the scene.

On November 27, Sergeant Fasbinder went to Recorder's Court, where Trudeau's preliminary examination on the United States Post Office case was to be held, apparently to view the shoes of Trudeau and his co-defendant because of the similarity between the Post Office and the Shaarey Zedek jobs. Trudeau's appointed counsel was unable to appear at the November 27 preliminary examination. Detective Randolph of the Detroit Police Department and Sergeant Fasbinder took defendant from the bull pen at the courthouse and requested that he lift his feet so that Sergeant Fasbinder could observe the heels of his shoes. He did so. Later the same day back at the Wayne County jail, Sergeant Fasbinder, with two or more police officers, requested Trudeau to give him his shoes. Trudeau refused. The police officers took the shoes from him and gave them to Sergeant Fasbinder. Trudeau had no attorney present. He was not advised of his constitutional rights. The officers seizing the shoes had no warrant.

At Trudeau's preliminary examination on the Shaarey Zedek charges, his appointed counsel argued unsuccessfully that all evidence pertaining to the shoes should be suppressed. At trial, the shoe, the imprint, and their comparison by an expert,

were introduced in evidence over defendant's objection. Trudeau was convicted of second-degree murder and breaking and entering in connection with the Shaarey Zedek crime. The Court of Appeals affirmed. (22 Mich App 246.) We granted leave to appeal. (384 Mich 762.)

Defendant argues that his Fourth, Fifth and Sixth Amendment rights were violated while he was in custody awaiting trial for another crime. The state argues that the seizure was allowable under the "open view" doctrine, and that there is no Fourth, Fifth or Sixth Amendment protection against fingerprinting or obtaining measurements of a defendant in custody.

We are unable to accept the people's contention that the shoes were properly seized under the plain or open view doctrine. There is no showing that when Sergeant Fasbinder went to the jail he was acting on anything other than a mere suspicion. Even after he had viewed the shoes and finally obtained them, the vital link between the shoes and the heel print found at the scene of the crime was not established. The shoes were turned over to an expert who testified as follows:

"*A.* * * * These examinations, as I say, started that day and continued for a period of about one week, either full or part time, during that period of time. In the first instance, I examined a partial heel print found on the back of a statement form, People's exhibit two. This examination was made visually and microscopically, utilizing various lighting techniques. A little bit later, the partial heel print was photographed in a number of ways, utilizing various types of lighting techniques. The heels of the shoes, People's exhibit 15, were also examined, visually by myself, and microscopically treated in various ways, and photographed. At least the left

heel was photographed, subsequently, by myself. Comparisons were then made of the photographs obtained, as a result of the initial comparisons and microscopic examination.

"*Q.* Approximately how long did this examination take you, Lieutenant Myers?

"*A.* As I've stated, it took the better part of one week, was the working hours, the better part of one week."

From the above testimony, it is apparent that Sergeant Fasbinder had no probable cause to believe that the seized shoes were evidence linked to the crime. This was not established until the expert made his week-long examination of them. If Trudeau had not been in custody, the Southfield Police Department would have had to obtain a warrant to search and seize an article of his clothing. Since there was no showing of probable cause for the seizure, what of Trudeau's Fourth Amendment (United States Constitution) and Article 1, § 11 (Michigan Constitution) rights to be secure from unreasonable search and seizure?

In *People* v. *Carr* (1963), 370 Mich 251, this Court reversed a conviction based on evidence obtained from a warrantless search of defendant's impounded car while defendant was serving a jail sentence on an unrelated misdemeanor charge. This Court unanimously pointed out in *Carr* that (p 255):

"It could not be seriously urged that the search and seizure made by the officers without defendant's consent or without a search warrant could not, nor likely would not, even have been attempted, had defendant been at liberty and his automobile been parked on his own premises. Defendant was not stripped of his civil rights and his constitutional safeguards merely because he was serving a sentence in the county jail for an unrelated misdemean-

or. It would be a dangerous rule of law and an invitation to circumvent the constitutional guaranty against unreasonable search and seizure were the citizen convicted of a misdemeanor and in jail, possibly in default of payment of a fine, to be stripped of all his civil liberties."

The United States Supreme Court has declared that an imprisoned felon does not lose his constitutional right against self-incrimination as to an entirely separate offense. *Mathis* v. *United States* (1968), 391 US 1 (88 S Ct 1503, 20 L Ed 2d 381). The right against unreasonable search and seizure is of equal stature with the privilege against self-incrimination.

Defendant did not lose his civil rights or liberties while he was in police custody awaiting trial on another charge. This holding is not to be construed as in any way affecting essential steps which must be taken by the police in processing a prisoner as outlined in *United States* v. *Wade* (1967), 388 US 218 (87 S Ct 1926, 18 L Ed 2d 1149), and to assure the protection of the police and of other prisoners.

The Court of Appeals is reversed. The conviction is set aside and the case is remanded to the trial court for a new trial.

T. M. KAVANAGH, C. J., and ADAMS, T. G. KAVANAGH, SWAINSON, and WILLIAMS, JJ., concurred.

T. E. BRENNAN, J. (*dissenting*). If the link to the Shaarey Zedek murder had been a fingerprint instead of a heel print, no question of Fourth and Fifth Amendment rights would have been raised.

I fail to see the distinction.

I would affirm the conviction.

BLACK, J., concurred with T. E. BRENNAN, J.