PEOPLE v BARBAT

PEOPLE v UNSWORTH

OPINION OF THE COURT

1. SEARCHES AND SEIZURES—REASONABLENESS—EVIDENCE—ADMISSIBIL-
ITY.

Viewing and seizing by the police of a pair of boots worn by a
murder suspect was reasonable and admission of them into
evidence at the subject's trial was proper where the police
officers had observed at the scene of the crime footprints which
clearly displayed a wavy ripple pattern similar to that made by
the sole of a woman's shoe-boot, the suspect had been observed
at the scene on the evening of the crime and at the time had
been wearing knee-high shoe-boots, the suspect had voluntarily
gone to the police station for interrogation and had consented
to showing the officers the sole of her boot, and the officers
seized the boots and arrested the suspect when they observed
the sole of the boot and recognized the wavy ripple pattern as
being similar to the footprints observed at the scene of the
crime; the reasonableness of searches and seizures must be
considered in the light of the circumstances, and in this case
the officers acted reasonably and with the dispatch the occasion
warranted.

CONCURRENCE IN PART, DISSENT IN PART BY ADAMS, J.

2. CRIMINAL LAW—EVIDENCE—PROOFS—ALTERNATE PROOFS—PHOTO-
GRAPHS.

*The people in a trial of a crime of violence are not required to
exhaust alternative methods before offering and having prop-
erly admitted into evidence photographs of the victims as they*

REFERENCES FOR POINTS IN HEADNOTES

[1, 4] 68 Am Jur 2d, Searches and Seizures §§ 2, 41 *et seq.*
[2] 29 Am Jur 2d, Evidence § 785 *et seq.*
[3] 29 Am Jur 2d, Evidence § 775 *et seq.*
[5] 5 Am Jur 2d, Arrest § 44.
[6] 68 Am Jur 2d, Searches and Seizures §§ 49–53.
[7] 58 Am Jur, Witnesses § 865 *et seq.*

were found; the people are not required to present their case on any theory of alternative proofs.

3. HOMICIDE—EVIDENCE—GRUESOME AND INFLAMMATORY—EXHIBITS—SKULL SECTION.

It was not error to admit into evidence in a murder trial a one-inch section of the victim's skull in which was embedded the tip of a knife where the use of a knife was material to the prosecution's theory of the case, a knife found at the scene of the crime matched the tip of the embedded blade, the exhibit was prepared in such a way as to be no different from hundreds of exhibits from antiquity or from science to be found in museums, and, when viewed by itself, the exhibit barely connoted the violent death of the victim; even though the issue might perhaps have been better handled by stipulation and the defense offered to stipulate the facts shown, which offer the prosecution refused, the exhibit was not gruesome and inflammatory and its admission into evidence was not error.

4. SEARCHES AND SEIZURES—INCIDENT TO ARREST—APPEAL AND ERROR—EVIDENCE—CIRCUMSTANTIAL EVIDENCE.

A seizure of a suspect's boots by the police can only be justified as having occurred in connection with a valid arrest where the police had no search warrant for them and the seizure and arrest occurred at the same time in the police station where the suspect had voluntarily appeared; admission of the boots so seized into evidence at a subsequent trial of the suspect was reversible error because the arrest was without probable cause, all the evidence against the defendant was circumstantial, and the boots were a vital link in the chain of evidence.

5. ARREST—SUBSEQUENT RELEASE—PROBABLE CAUSE—ADMISSIONS.

The speedy release of a suspect within a few hours of his arrest constitutes an admission by the police that, at that time, they had no probable cause to arrest him.

6. SEARCHES AND SEIZURES—CONSENT—THIRD-PARTY CONSENT—CONSTITUTIONAL LAW—EVIDENCE.

Consent to search a premises was validly given by a third party and evidence seized therein was properly admitted against a defendant where it was shown that the consenting party and the defendant had an equal right to possession or control of the premises; the rule does not require the contemporaneous arrest of the consenting third party to sustain the validity of the search because the Constitutions of both the United States and Michigan forbid only unreasonable searches and it would be

*unreasonable to require the police to obtain consent from all of
the persons having joint access to a given area before a search
could be carried out (US Const, Am IV; Const 1963, art 1, § 11).*

7. Criminal Law—Witnesses—Defendant—Credibility—Prior
   Conviction—Instructions to Jury.
   *Prior convictions may be shown for the purpose of testing the
   credibility of a defendant who testified in his own behalf; where
   the trial judge instructed the jury to consider testimony of such
   prior convictions only in assessing the defendant's credibility
   there was no error.*

Appeal from Wayne, James N. Canham, J. Submitted Division 1 January 3, 1973, at Detroit. (Docket Nos. 12656, 12657.) Decided September 25, 1973. Leave to appeal applied for.

Michael J. Barbat and Eula G. Unsworth were convicted of first-degree murder. Defendants appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Patricia J. Boyle,* Assistant Prosecuting Attorney, for the people.

*Michael C. Moran,* Assistant State Appellate Defender, for defendants.

Before: V. J. Brennan, P. J., and T. M. Burns and Adams,* JJ.

V. J. Brennan, P. J. We concur, and adopt Justice Adams' opinion in its entirety except as to the disposition of issue number 2. That issue being whether the trial court erred in admitting defend-

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

ant Unsworth's boots and whether the officers had probable cause to seize the boots.

The defendant in her brief relies on *People v Trudeau,* 385 Mich 276; 187 NW2d 890 (1971), contending that here the viewing and seizing of the boots constituted an illegal search and seizure because it was warrantless. We feel, however, that the viewing of the boots was not a search; and, after examining the record, find that the viewing was reasonable.

We point out that at the time the defendant Unsworth was being interviewed by the detectives at the Dearborn police station, she had *voluntarily* appeared. The officers also had in their possession a description given by witnesses who were in the bar on the morning of the murders, which description fit the defendant Unsworth. During this interview, one of the officers observed the sole of her boot and recognized that design as being similar to the design of the boot imprint that was found by the garage in the snow. Upon this observation, he placed the defendant under arrest and asked her for the boots.

Armed with the above information as well as other specific facts, the officers had reasonable cause to take immediate steps to retrieve and examine the boots.

In *People v Eddington,* 387 Mich 551; 198 NW2d 297 (1972), the Court points out that where a detective had seized and examined the shoes of the defendant at the defendant's apartment they consider the reasonableness of this seizure in the light of all of the circumstances and in that case found that he had to act with dispatch because the occasion warranted it. We point out that had the officers, at the time of their examination of defendant's boots, not done so, the evidence could very

well have been lost; the officers here "acted rea-
sonably and with the dispatch the occasion war-
ranted". Moreover, unlike *People v Trudeau, su-
pra,* where the officer was acting only on the
similarity in the *modus operandi* of the crime for
which Trudeau was under arrest, the officers in
this case had more than a mere suspicion of de-
fendant's involvement.

We have examined the facts and the record in
this matter and find that it was not error to admit
defendant Unsworth's boots in evidence.

Conviction affirmed.

T. M. BURNS, J., concurred.

ADAMS, J. *(concurring in part and dissenting in
part).*

### *Statement of Facts*

At approximately 9:35 a.m. on January 29, 1971,
police officers arrived at Solomie's Bar in Dear-
born, Michigan, to investigate the slayings of bar
patron Lawrence Suprenant and the bar's co-
owner, Maria Solomie. Autopsies performed upon
the victims indicated that Suprenant died of a stab
wound in his neck and a gunshot wound in his
head, while Mrs. Solomie was killed by a stab
wound in her neck.

During their investigation, police officers discov-
ered several footprints of recent origin in snow on
the floor of a garage owned by Mrs. Solomie. The
officers measured and photographed these foot-
prints. Two of them clearly displayed a wavy
ripple pattern similar to that made by the sole of a
woman's shoe-boot. Subsequent comparison of
these prints with footwear owned by Mrs. Solomie
and with boots owned by Mrs. Pat Baker (at whose

home defendant Barbat resided) eliminated the possibility that either of them had made the footprints.

Dearborn police officers learned that defendant Unsworth had been seen with defendant Barbat in Solomie's Bar on the night of January 28, 1971, and at that time she had been wearing a pair of knee-high shoe-boots. They telephoned Mrs. Unsworth on the afternoon of January 29, explained that they wished to talk with her about the slayings and, when she agreed, drove her from her home to the police station.

Interrogation of Mrs. Unsworth was conducted by Detective Sergeants James Hughes and Robert Wancha. Both had observed the footprints inside the Solomie garage on the previous day. At one point during the questioning, Hughes asked Mrs. Unsworth if he could observe the bottom of her boot. She raised her boot to permit his inspection.

Immediately after viewing the sole of the boot, the interrogating officers arrested Mrs. Unsworth and confiscated her boots. They released her later that same afternoon, but retained her boots.

Based upon their preliminary investigation, the police became suspicious of Michael Barbat, who resided in a room at the home of Mr. and Mrs. Robert Baker. Scientific analysis of some papers found strewn about the floor of the bar disclosed the presence of a distinct diamond-shaped impression apparently caused by the imprint of a shoe. Since this peculiar pattern was determined not to have been made by the shoes of victim Suprenant, police suspicion focused on Barbat.

On February 6, 1971 Detective Hughes—without a search warrant but with the permission of Mr. Baker—removed a pair of Barbat's shoes from a closet area shared by Barbat and the Bakers.

Police had earlier removed some of Mrs. Baker's clothing from this closet for investigation. Mrs. Baker described this area as follows:

"*Q*. Where did Nello stay?

"*A*. In the spare bedroom.

"*Q*. Where is the spare bedroom relative to the stairs that go up to the attic?

"*A*. It's right off the bedroom, the stairway to the attic.

"*Q*. Now, are those stairs situated in a kind of closet?

"*A*. Yes.

"*Q*. Is that closet a part of the bedroom or is that off of the bedroom.

"*A*. It's off the bedroom.

"*Q*. All right. There is also a closet in the bedroom?

"*A*. No.

"*Q*. Keep any clothes in that closet in which the stairs are in?

"*A*. Yes.

"*Q*. Keep a lot of clothes there?

"*A*. Enough, it's full practically.

"*Q*. All right. You own a black coat?

"*A*. Yes.

"*Q*. Black skirt?

"*A*. Yes.

"*Q*. Where do you keep that black coat ordinarily?

"*A*. In the spare bedroom.

"*Q*. In the one where Nello was staying?

"*A*. Yes.

"*Q*. Police ever get that coat?

"*A*. Yes.

"*Q*. And that's the same coat that was in the bedroom where Nello was staying?

"*A*. Yes.

"*Q*. And the skirt?

"*A*. I think it was with it."

Detective Hughes described the arrangement of the Baker house in the following language:

"*Q.* Tell us about the layout of the downstairs of the Baker house.

"*A.* The layout?

"*Q.* Yes.

"*A.* The house at 12929 Heyden, it faces east, the front of the house faces east. There is an enclosed porch on the front. You enter the front door into a living room on your right. To the left is a bedroom. This is occupied by Pat and Bob Baker. West of the living room is a dining room. To the south of that dining room is another sleeping room, or bedroom. You enter that through some folding doors. There is another folding door on the south side of that room. It is about a 9 × 9 foot room.

"*Q.* That is a so-called spare bedroom?

"*A.* Yes.

"*Q.* What is through the second folding door?

"*A.* There is a stairway that goes up to the attic and at the bottom of the stairway, outside the bedroom, is an area that is used as a closet where Pat Baker, Bob Baker and Nello Barbat would keep their clothing. To the west of the dining room is a kitchen. On the outside of that part of the building is a bathroom. At the rear of the building is an enclosed porch that seems to serve as a utility room."

The defendants were arrested and charged with two counts of first-degree murder in the perpetration of a robbery (MCLA 750.316; MSA 28.548). Both defendants underwent a joint preliminary examination on April 2, 1971. They were bound over to circuit court by the examining magistrate. Their cases were ordered consolidated for trial.

Prior to trial defendant Unsworth's attorney filed a motion to suppress all evidence concerning the boots and additionally moved to suppress certain photographs of the victims' bodies. The motion was denied by the trial judge.

Defendant Unsworth's boots were received into evidence and were the subject of much trial testi-

mony, including that of a Michigan State Police expert who stated that the photographed footprints could have been made by Mrs. Unsworth's boots.

Defendant Barbat's trial counsel objected to the admission of Barbat's shoes but was overruled. Plaintiff's expert witness testified that the shoes could have made the imprint found on papers scattered about the floor of Solomie's Bar.

The jury convicted the defendants of first-degree murder on each of the two counts. Both defendants appeal as of right.

## Issue I

*Did the trial court err by admitting into evidence a one-inch portion of a victim's skull and photographs of the victims' bodies over objections that the exhibits were gruesome and inflammatory in nature?*

The prosecutor offered in evidence a number of black-and-white photographs to orient the jury to the location of the bodies in the bar. The defense objected to these photographs as being gruesome and inflammatory and offered to enter into a stipulation for their stated purpose. The prosecution refused to stipulate. The photographs which were admitted into evidence show the bodies as they were found at the scene of the crime.

As was noted recently by the Michigan Supreme Court in *People v Eddington,* 387 Mich 551; 198 NW2d 297 (1972), the people are not required to present their case on any theory of alternative proofs. We have viewed the photographs. They depict the *corpus delicti* and the areas around the bodies from different angles. The eight photographs are somewhat repetitive. Half of this num-

ber might well have sufficed. While we would caution trial judges to restrict such evidence to that which is essential, we are unable to find that the trial judge exceeded the bounds of his discretion by admitting the photographs into evidence.

The trial judge also admitted into evidence a one-inch section of a victim's skull in which was embedded the tip of a knife. The use of a knife was material to the prosecution's theory of armed robbery. A knife found at the scene matched the tip of the embedded blade. The defense offered to stipulate to these facts, but the prosecutor refused. The prosecution might well have agreed to stipulate. What is gruesome and inflammatory to one individual is not necessarily so to another since this is largely a subjective matter. The exhibit was prepared in such a way as to be no different from hundreds of exhibits from antiquity or from science to be found in museums. Viewed by itself, it barely connotes the violent death of the victim. Although this issue might perhaps better have been handled by stipulation, we do not find the exhibit to be gruesome and inflammatory and therefore find no error.

### Issue II

*Were defendant Unsworth's boots improperly admitted into evidence?*

We find it unnecessary to determine whether defendant Unsworth went to the police station voluntarily, was warned as to her rights, or voluntarily permitted the police to see the sole of her boot. The seizure of the boots can only be justified as having occurred in connection with a valid arrest as the police had no search warrant for them. *People v Bendoni,* 263 Mich 295; 248 NW 627 (1933); *People v Stein,* 265 Mich 610; 251 NW

788 (1933). The salient fact is that she was released within a few hours the same afternoon the police arrested her and confiscated her boots. The police officers' speedy release of defendant Unsworth constituted an admission that, at that time, they had no probable cause to arrest her and seize her boots. The trial court erred by admitting them into evidence. *People v Trudeau,* 385 Mich 276; 187 NW2d 890 (1971). All of the evidence leading to defendant Unsworth's conviction is circumstantial. The boots were a vital link in the chain of evidence. The error must be held to be reversible.

*Issue III*

*Did the trial court err by admitting into evidence defendant Barbat's shoes found in a closet shared by the residents of the house, where police had the homeowner's consent to search but not the consent of Barbat?*

We have been at pains in the statement of facts in this case to depict in detail the situation with regard to the Baker residence and defendant Barbat's room. As has been shown, the Bakers and Barbat all kept their clothes in the closet from which the shoes were seized. Although consent to a search must ordinarily be given by the party affected, there is an exception to the general rule where a third party consents and the consenting party's equal right of possession or control of the premises is shown. *People v Bunker,* 22 Mich App 396; 177 NW2d 644 (1970); *Frazier v Cupp,* 394 US 731; 89 S Ct 1420; 22 L Ed 2d 684 (1969); *United States v Mazurkiewicz,* 431 F2d 839 (CA 3, 1970); *White v United States,* 444 F2d 724 (CA 10, 1971); *United States v Mix,* 446 F2d 615 (CA 5, 1971); *United States v Novick,* 450 F2d 1111 (CA 9, 1971); *United States v Gargiso,* 456 F2d 584 (CA 2, 1972).

While it is argued that the contemporaneous arrest of the consenting third party is a necessary prerequisite to the validity of the search, we do not believe the rule to be that narrow. The Constitution of the United States and that of this state forbid *unreasonable* searches. US Const, Am IV; Const 1963, art 1, § 11. We believe it would be unreasonable to require the police to obtain consent from all of the persons having joint access to a given area before a search could be carried out, particularly in a case such as this one where police suspicion had focused on more than one person. The concept of common use must, of course, be examined in the light of the facts of the particular case. However, here there is no question but that either of the Bakers had full access to the closet and could have gone to it and obtained the shoes for the police. The consent to search was not violative of defendant Barbat's rights. The shoes were properly admitted into evidence.

## Issue IV

*Did the trial court err by permitting the introduction into evidence of Mrs. Unsworth's prior felony conviction to impeach her credibility?*

During her direct examination, defendant Unsworth admitted a recent conviction of assault with intent to commit great bodily harm less than murder. MCLA 750.84; MSA 28.279. She now alleges that evidence of this conviction was improperly introduced for impeachment purposes.

The issue of admissibility of prior convictions for the purpose of testing the credibility of a defendant who testifies in his own behalf has been repeatedly considered by the courts of this state. Such convictions may be shown. MCLA 600.2158;

MSA 27A.2158; *People v Roney,* 7 Mich App 678; 153 NW2d 175 (1967). The trial judge instructed the jury to consider the prior conviction only in assessing Mrs. Unsworth's credibility. There was no error.

The conviction of Michael Barbat is affirmed. The conviction of Eula Unsworth should be vacated and her case remanded to the trial court for a new trial.